Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/21/2025 09:09 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
KEITH L. ALLEN, APPELLANT.
___ N.W.3d ___

Filed March 21, 2025.    No. S-23-957.

1. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

2. **Trial: Evidence: Appeal and Error.** A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.

3. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

4. **Search and Seizure: Appeal and Error.** The denial of a motion for return of seized property is reviewed for an abuse of discretion.

5. **Evidence: Waiver: Appeal and Error.** A party who fails to make a timely objection to evidence waives the right on appeal to assert prejudicial error concerning the evidence received without objection.

6. **Appeal and Error.** Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

7. **Criminal Law: Search and Seizure: Property.** Property seized in enforcing a criminal law is said to be "in custodia legis," or in the custody of the court.

8. **Police Officers and Sheriffs: Search and Seizure: Property.** Property seized and held as evidence is to be safely kept by the officer seizing it unless otherwise directed by the court, and the officer is to exercise reasonable care and diligence for the safekeeping of the property.

9. **Trial: Search and Seizure: Evidence.** Property seized and held as evidence shall be kept so long as necessary for the purpose of being produced as evidence at trial.

10. **Search and Seizure: Property.** Upon the termination of criminal proceedings, seized property, other than contraband, should be returned to the rightful owner unless the government has a continuing interest in the property.

11. **Trial: Evidence.** The State has an interest in keeping evidence so long as necessary for the purpose of being produced as evidence in any trial, including postconviction proceedings or a new trial following the grant of a motion for a new trial.

12. **Courts: Jurisdiction: Search and Seizure: Property.** Neb. Rev. Stat. § 29-820 (Reissue 2016) applies only where the exclusive jurisdiction of a court under Neb. Rev. Stat. § 29-818 (Reissue 2016) has not been invoked.

Appeal from the District Court for Lincoln County, Cindy R. Volkmer, Judge. Reversed and remanded for further proceedings.

Keith L. Allen, pro se.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

Funke, C.J., Miller-Lerman, Cassel, Papik, and Freudenberg, JJ.

Funke, C.J.

## INTRODUCTION

Keith L. Allen appeals an order of the district court, which partially denied his motion for return of property allegedly seized from him after his arrest. Allen argues that the district court erred in its evidentiary rulings and in failing to return additional items. The State disputes Allen's claims but otherwise argues that the district court abused its discretion in disposing of certain items. Ultimately, we need not reach a majority of the parties' arguments because we find that the district court plainly erred in multiple regards. As such, we reverse the order of the district court and remand the matter for further proceedings consistent with this opinion.

## BACKGROUND

Allen was convicted of first degree murder and use of a firearm to commit a felony and sentenced to life imprisonment, plus 20 to 30 years. His convictions were affirmed on direct appeal,[1] and his petition for a writ of certiorari was denied.[2]

After we affirmed his convictions, Allen filed a motion in the district court for Lincoln County, Nebraska, seeking the return of over 50 items of personal property allegedly seized from him after his arrest. Approximately 25 of those items were firearms. Other items included video recordings from cameras on a nearby federal building and nine "bullet slugs," which apparently correspond to the nine projectiles found in the victim's body.[3]

### HEARING ON ALLEN'S MOTION

The district court held a hearing on Allen's motion. At the start of the hearing, Allen stated that after he was arrested, he "kind of gave everything away." Thereafter, Allen argued that except for the firearm in his possession at the time of the offenses, all firearms listed in the motion belonged to other people, as did certain clothing. Allen also argued that the cell phone listed in the motion had evidence on it that was not used at trial, but that was needed for his criminal case and for a wrongful death suit brought against him by the personal representative of the victim's estate (the Estate). However, Allen presented no evidence that any of the items had been seized from him.

The State, in turn, observed that the court hearing the wrongful death suit had granted the Estate's motion for prejudgment attachment upon Allen's assets, including "all automobiles, real estate, firearms/weapons" owned by him or in his

---

[1] See *State v. Allen*, 314 Neb. 663, 992 N.W.2d 712 (2023), *modified on denial of rehearing* 315 Neb. 255, 995 N.W.2d 446.

[2] See *Allen v. Nebraska*, ___ U.S. ___, 144 S. Ct. 1070, 218 L. Ed. 2d 248 (2024).

[3] See *Allen, supra* note 1.

possession. The State offered the order granting that motion as exhibit 300. Allen stated that he had no objection, and the exhibit was received into evidence.

The State also objected that any items that were evidence, or that "could possibly be evidence in the future," would remain evidence until Allen dies and "should not be returned ever." However, the State did not identify any specific items other than "the vehicle" as evidence, and exhibit 300 was the only evidence that the State adduced at the hearing.

The court took the matter under advisement. In so doing, the court stated that the person whom Allen claimed owned the bulk of the firearms needed to provide "documentation" to the court and the State that he had purchased the firearms so that the documentation could "be reviewed as part of this motion."

## Posthearing Filings

The purported owner of the firearms subsequently produced documentation that was marked as exhibit 301. However, exhibit 301 is not part of the record on appeal, and its contents are known to us solely from the court's discussion of it as described below.

Shortly after exhibit 301 was submitted, the Estate objected to it and to Allen's motion for return of the property. The Estate argued that exhibit 301 lacked foundation, contained hearsay, and was not relevant because the question of whether the firearms belonged to Allen or the third party was to be determined in the wrongful death suit and not in the present case. The Estate also argued, among other things, that Allen lacked standing to seek the return of property that he claims belongs to a third party.

## District Court's Order

In an order issued after the hearing, the district court began by observing that under *State v. Agee*,[4] "[w]hen criminal proceedings have terminated, the person from whom property

---

[4] *State v. Agee*, 274 Neb. 445, 450, 741 N.W.2d 161, 166 (2007).

was seized is presumed to have a right to its return, and the burden is on the government to show that it has a legitimate reason to retain the property." However, the court apparently took at face value Allen's claim that all items listed in his motion were seized from him.

The court then sustained the Estate's objection to exhibit 301 on foundation and hearsay grounds. The court observed that exhibit 301 consisted of several "receipts," each of which had the third party's name on the "'from'" line, and all but one of which had Allen's name on the "'by'" line. Because the court received no information other than those receipts, it declined to receive exhibit 301 into evidence. However, the court overruled the Estate's objection to Allen's motion for return of the property, in part because there was no evidence of superior title to the property insofar as the objection to exhibit 301 was sustained.

The court also overruled the State's objection that certain property would always be needed as evidence. In so doing, the court noted that there were no postconviction proceedings pending and, thus, "no 'trial' at which the property may be needed." The court also noted that the State "presented no evidence as to what items of property were used at trial or may be used at future postconviction proceedings" and that no exhibit list was filed as part of the criminal trial. The court explained that it could not "reasonably conclude" that all items listed in the motion were evidence. But the court stated that it would take a "conservative approach" in disposing of the property to preserve any items that might be needed in future proceedings. Similarly, as to the State's observation that certain property was subject to an order of prejudgment attachment, the court opined that the order showed only that another party had a lien on the property and not that the government had a legitimate reason to retain the property.

The court next looked to Neb. Rev. Stat. § 29-820 (Reissue 2016) to determine how to dispose of the various items listed in Allen's motion. Ultimately, the court determined that each

item fell into one of three broad categories: (1) evidence, (2) per se contraband or items prohibited in Nebraska prisons, and (3) other items. The court ordered that items that were evidence be retained as such, that per se contraband and items not allowed in the prisons be sold, and that the other items be returned to Allen. Firearms or weapons and ammunition and ammunition components were among the items categorized as per se contraband or prohibited in prisons. However, the court ordered that any firearms and ammunition and ammunition components used in the commission of the offenses of which Allen was convicted be retained as evidence, although it did not identify which specific items those were. The court further ordered that the items returned to Allen were to be held by him subject to the order of prejudgment attachment. There were similar provisions regarding the items to be sold.

### Allen's Objections and Appeal

Several days after the district court issued its order, Allen objected and moved to strike exhibit 300. In that filing, Allen alleged that when exhibit 300 was offered at the hearing, he understood it to be the complaint in the wrongful death suit. Allen also apparently argued that because he was never served with the order of prejudgment attachment in the wrongful death suit, its admission into evidence in the present case violated his due process rights. Allen similarly objected to the Estate's objection to exhibit 301 and his motion for return of seized property. He likewise objected to the district court's order.

Allen then appealed, and we moved the matter to our docket.[5]

## ASSIGNMENTS OF ERROR

Allen assigns, restated, that the district court erred in (1) receiving the order of prejudgment attachment in the wrongful death case into evidence, (2) sustaining the objection of

---

[5] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

the "non-party" Estate to the purported receipts for the firearms, and (3) partially denying his motion for return of seized property.

## STANDARD OF REVIEW

[1-3] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[6] A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.[7] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[8]

[4] The denial of a motion for return of seized property is also reviewed for an abuse of discretion.[9]

## ANALYSIS

### No Abuse of Discretion in
### Admitting Exhibit 300

Allen's first assignment of error concerns exhibit 300, the order of prejudgment attachment in the wrongful death suit brought against him by the Estate. Allen argues that exhibit 300 should not have been admitted into evidence, but instead excluded on foundation, relevance, and hearsay grounds. The State, in turn, argues that Allen waived his right to assert prejudicial error on appeal as to the admission of exhibit 300 because he made no objection to it at the hearing. The parties

---

[6] *In re Masek Family Trust, ante* p. 268, 15 N.W.3d 379 (2025).

[7] *Id*.

[8] *State v. Haas*, 317 Neb. 919, 12 N.W.3d 787 (2024).

[9] *State v. Assad*, 317 Neb. 20, 8 N.W.3d 729 (2024).

also dispute whether the district court plainly erred in admitting exhibit 300 into evidence.

[5] As the State argues, a party who fails to make a timely objection to evidence waives the right on appeal to assert prejudicial error concerning the evidence received without objection.[10] The record here shows that Allen failed to object to exhibit 300 at the hearing. To the contrary, Allen said that "[he had] no objection" to the exhibit.

On appeal, Allen essentially asks us to disregard his acquiescence to the exhibit's admission because when he said he had no objection, he believed exhibit 300 was the complaint in the wrongful death suit. However, that claim is inconsistent with the record on appeal, which shows that immediately before Allen voiced his agreement, it was repeatedly stated that the order "grant[ed] a [m]otion for [p]rejudgment [a]ttachment." Allen did object to exhibit 300 after the district court issued its order. However, that objection was untimely.[11]

Allen is correct in suggesting that we can recognize plain error even when evidence is received without a timely objection.[12] However, we have previously explained that "[w]e are not inclined to readily find plain error" in testimony or other evidence to which the opposing party did not object.[13] Our rationale for this is twofold. First, because as a general matter a trial court is not obligated to rule sua sponte on the admissibility of evidence, it is difficult to say, without an objection, that a court committed plain error when it allowed

---

[10] *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). See, also, Neb. Rev. Stat. § 27-103(1)(a) (Reissue 2016)

[11] See, e.g., *State v. Rogers*, 237 Neb. 506, 466 N.W.2d 537 (1991) (finding that motion and objection to State's evidence made by defendant after evidence was received by trial court was untimely).

[12] See *State v. Vann*, 306 Neb. 91, 944 N.W.2d 503 (2020).

[13] *State v. Rush*, 317 Neb. 622, 665, 11 N.W.3d 394, 430 (2024), *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787. See, also, *State v. Senteney*, 307 Neb. 702, 950 N.W.2d 585 (2020).

specific evidence.[14] Second, even when evidence is arguably improper, "for strategic reasons the nonproponent may choose not to raise an objection because to do so would unduly emphasize" the evidence.[15] In other words, we view the plain-error exception to the contemporaneous-objection rule as one to be "used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result."[16]

The circumstances here, however, are not such that a miscarriage of justice would result from the admission of exhibit 300.[17] The record shows that the district court found the order of prejudgment attachment was not a "legitimate reason" for the State to retain the property. Consistent with that ruling, the court did not cite the lien as a basis for not returning any items to Allen. Instead, in ruling that specific items should not be returned to Allen, the court considered whether the items constituted evidence or per se contraband or were prohibited in Nebraska prisons.[18] Granted, the court did direct that the items returned to Allen and the items to be sold were to be held subject to the order of prejudgment attachment. However, as the district court observed, Allen's assets would have been subject to the order of prejudgment attachment in the wrongful death suit, insofar as it is effective, even absent such orders by the court in this case.

We similarly find the district court's conclusion that the order of prejudgment attachment was not a "legitimate reason" for the State to retain the property is dispositive of Allen's argument that the order should not have been received into

---

[14] See *Senteney, supra* note 13.

[15] *Id*. at 711, 950 N.W.2d at 592.

[16] *Rush, supra* note 13, 317 Neb. at 665, 11 N.W.3d at 430 (internal quotation marks omitted).

[17] See, e.g., *Senteney, supra* note 13.

[18] Cf., *State v. Zimmer*, 311 Neb. 294, 972 N.W.2d 57 (2022) (considering whether it is crime for defendant to possess seized firearm in determining whether rule mandating forfeiture of per se contraband applies); *State v. Riley*, 31 Neb. App. 292, 979 N.W.2d 538 (2022).

evidence because it was never served on him in the wrongful death suit. Even if the order was not served on Allen in that case, as he claims, he cannot be seen to have been prejudiced by its admission in this case because the court did not rely on the order in declining to return any property to Allen.

## No Abuse of Discretion in
## Excluding Exhibit 301

Allen's second assignment of error concerns exhibit 301, the purported receipts for the firearms that Allen claimed at the hearing belonged to a third party. The district court granted the Estate's motion to exclude exhibit 301 on foundation and hearsay grounds. Allen argues that the district court erred in so doing, because the Estate was not a party to this case and, as such, had no right to object to exhibit 301. Allen also argues that exhibit 301 was not inadmissible on foundation and hearsay grounds. The State counters that regardless of whether the Estate had the right to intervene and did so properly, Allen failed to produce a record that supports this assignment of error because exhibit 301 is not part of the record on appeal. The State also argues that Allen was not prejudiced by the exclusion of exhibit 301 because if the exhibit had been admitted, it would have shown that Allen did not own the firearms and, thus, was not entitled to their return.

Even assuming, for the sake of argument, that the Estate should not have been permitted to object to the admission of exhibit 301 and that the exhibit was otherwise admissible, any error here was harmless. Allen himself waived any presumption of possession that he had as to the firearms when he stated on the record at the hearing that the firearms belonged to a third party. We have previously found that under such circumstances, defendants waive any presumption of possession to which they might otherwise have been entitled.[19] In other words, Allen made essentially the same point that the exhibit would have, but he fails to explain how proof that the

---

[19] *State v. Ebert*, 303 Neb. 394, 929 N.W.2d 478 (2019).

property belonged to another would have shown his entitlement to its return.

## District Court Plainly Erred
### in Disposing of Property

Allen's third assignment of error concerns the disposition of the property by the district court. Allen argues that additional items should have been "returned and released to [a third party] who can lawfully possess all the items listed in his motion."[20] In support of that claim, Allen renews the arguments about the admission of exhibit 300 and the exclusion of exhibit 301 discussed above. Allen also claims that the State failed to meet its burden to show that it had a legitimate interest in the property and that the district court erred in basing its decision in part on § 29-820.

The State disagrees with Allen's arguments but takes issue with the disposition of the property on different grounds. The State argues that several of the items listed in Allen's motion "were not seized from him or his residence"[21] and that the district court "guess[ed]" as to what items were evidence.[22] As such, the State contends that the district court should have "h[e]ld a full evidentiary hearing to establish" which items were actually seized from Allen and which items were evidence.[23] Absent such a hearing, the State argues that the court ordered the victim's wallet and identification cards be released to Allen and that the "murder weapon and the nine bullet slugs that killed the victim" be sold.[24] The State claims that such "untenable outcome[s]" constitute an abuse of discretion,[25] and it asks us to reverse the decision of the

---

[20] Brief for appellant at 9.

[21] Brief for appellee at 13.

[22] *Id*. at 11.

[23] *Id*.

[24] *Id*. at 12.

[25] *Id*.

district court and remand the matter for further proceedings to remedy these issues. However, despite seeking this affirmative relief, the State failed to file a cross-appeal.[26] Instead, it apparently proceeds under the theory that an alleged abuse of discretion can be raised by an appellee absent a cross-appeal, in the same manner in which plain error may be raised.

[6] We have reservations about the State's approach. But ultimately, we do not need to rule on its merits. Nor do we need to resolve the majority of the parties' arguments here, because the district court plainly erred in several regards when disposing of the property. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[26] Before turning to our reasons for concluding that the district court plainly erred, we first review the legal framework governing return of seized property in cases such as this.

[7,8] Property seized in enforcing a criminal law is said to be "in custodia legis," or in the custody of the court.[27] Such property is to be safely kept by the officer seizing it unless otherwise directed by the court, and the officer is to exercise reasonable care and diligence for the safekeeping of the property.[28]

[9-11] Property seized and held as evidence shall be kept so long as necessary for the purpose of being produced as evidence at trial.[29] As a general rule, upon the termination of criminal proceedings, seized property, other than contraband, should be returned to the rightful owner unless the government has a continuing interest in the property.[30] "The government's

---

[26] *Peterson v. Brandon Coverdell Constr., ante* p. 342, 15 N.W.3d 698 (2025).

[27] *Assad, supra* note 9.

[28] *Id*.

[29] *Agee, supra* note 4.

[30] *Id*.

interest may take different forms as long as it is a legitimate interest."[31] Among other things, the State has an interest in keeping evidence so long as necessary for the purpose of being produced as evidence in any trial, including postconviction proceedings or a new trial following the grant of a motion for a new trial.[32]

In our seminal opinion in *Agee*, we further explained:

> [T]he person from whom property was seized is presumed to have a right to its return, and the burden is on the government to show that it has a legitimate reason to retain the property. It is long established that a presumption of ownership is created by exclusive possession of personal property and that evidence must be offered to overcome that presumption. One in possession of property has the right to keep it against all but those with better title, and the "mere fact of seizure" does not require that "entitlement be established anew." Seizure of property from someone is prima facie evidence of that person's right to possession of the property, and unless another party presents evidence of superior title, the person from whom the property was taken need not present additional evidence of ownership.[33]

*Agee* concerned items that were indisputably seized from the defendant. As such, it did not expressly address the defendant's initial burden to show that the items in question were actually seized from him. However, the opinions upon which *Agee* relied make clear that the defendant must make an initial showing that the items were seized from him or her before the State has the burden to establish a legitimate reason to retain

---

[31] *U.S. v. Duncan*, 918 F.2d 647, 654 (6th Cir. 1990).

[32] *Assad, supra* note 9.

[33] *Agee, supra* note 4, 274 Neb. at 450-51, 741 N.W.2d at 166-67. But see *State v. McGuire*, 301 Neb. 895, 907, 921 N.W.2d 77, 86 (2018) (explaining that in referring to "exclusive possession," *Agee* "did not speak with perfect clarity" and that possession need not be exclusive).

the property.[34] In other words, the presumption of a right to return of property applies only to property actually seized from the defendant.[35] We said as much over a decade after *Agee* in *State v. McGuire*.[36] In *McGuire*, we pointed to the fact that the defendant had made the requisite "initial showing" that the items were seized from him when concluding that the "burden [had] shifted to the State" to establish that another claimant had superior title to the property.[37]

In this case, contrary to the framework set forth above and, in particular, our decision in *McGuire*, the district court did not require Allen to make any initial showing that the property had been seized from him. Instead, the district court apparently took at face value Allen's suggestion in his motion that the items were his "seized personal property." However, Allen did not introduce his motion into evidence at the hearing,[38] and the pleadings alone are not proof.[39] This constituted plain error and, as the State argued on appeal, apparently resulted in the district court's ordering items that were not seized from Allen to be returned to him.

[12] The district court also plainly erred in basing its order disposing of the property in part on § 29-820. That is inconsistent with our prior decisions holding that § 29-820 applies only where the exclusive jurisdiction of a court under Neb.

---

[34] See *U.S. v. Dean*, 100 F.3d 19 (5th Cir. 1996); *United States v. Martinson*, 809 F.2d 1364 (9th Cir. 1987); *People v. Strock*, 931 P.2d 538 (Colo. App. 1996).

[35] See, e.g., *Jackson v. U.S.*, 526 F.3d 394 (8th Cir. 2008); *U.S. v. Maez*, 915 F.2d 1466 (10th Cir. 1990).

[36] *McGuire, supra* note 33.

[37] *Id*. at 910, 921 N.W.2d at 88.

[38] See, e.g., *Com. v. Johnson*, 931 A.2d 781 (Pa. Commw. 2007) (factual averments in defendant's motion for return of property can suffice to meet defendant's initial burden, provided that motion is introduced into evidence before trial court).

[39] *Bortolotti v. Universal Terrazzo & Tile Co.*, 304 Neb. 219, 933 N.W.2d 851 (2019).

Rev. Stat. § 29-818 (Reissue 2016) has not been invoked.[40] In this case, there is no dispute that the district court's exclusive jurisdiction under § 29-818 had been invoked; the district court itself recognized as much in its order. As such, the district court should not have looked to § 29-820 in determining how to dispose of the property. In so finding, we note that Allen raised this argument in support of his claim that additional property should have been returned. However, while we agree with Allen that this was error, it does not necessarily follow from this error that any additional items should have been returned, as he claims.

Further, the district court plainly erred in failing to determine which firearms or weapons and which ammunition and ammunition components were evidence of the offenses for which Allen was convicted. The court stated that "[a]ny firearm(s) or weapon(s) which were used in the commission of the crimes of which Allen has been convicted are ordered to not be sold and shall be maintained by the law enforcement agency as evidence." There were similar provisions as to ammunition and ammunition components and potentially also as to weapon parts and accessories, although the court mistakenly referred to "ammunition and ammunition components" in that portion of the order. However, the district court did not identify which specific firearms or weapons and ammunition and ammunition components were evidence. Instead, it seemingly left law enforcement to make that determination. That is inconsistent with the framework set forth above, which calls for property seized and held as evidence to be safely kept by the officer seizing it "unless otherwise directed by the court."[41]

---

[40] *Ebert, supra* note 19.

[41] *Assad, supra* note 9, 317 Neb. at 23, 8 N.W.3d at 732. See, also, *Agee, supra* note 4 (State's return of allegedly stolen items, apparently without direction from court, was contrary to court's exclusive jurisdiction over seized property).

## CONCLUSION

The district court plainly erred in presuming that personal items were Allen's when he failed to make an initial showing that they were seized from him, in basing its order in part on § 29-820, and in failing to identify which firearms and ammunition and ammunition components are evidence. As such, we reverse the order of the district court and remand the matter for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings.

STACY, J., participating on briefs.