Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/18/2025 09:14 AM CST

**State of Nebraska, appellee, v.
Matthew A. Hall, appellant.**

___ N.W.3d ___

Filed November 10, 2025.    No. A-24-980.

1. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.
2. \_\_\_\_: \_\_\_\_. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.
3. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.
4. \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_. To raise an ineffective assistance of counsel claim on direct appeal, the defendant must allege deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.
5. **Effectiveness of Counsel: Proof: Appeal and Error.** When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.
6. **Effectiveness of Counsel: Records: Appeal and Error.** Once raised, an appellate court will determine whether the record on appeal is sufficient

to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

7. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

8. \_\_\_\_: \_\_\_\_. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. To show prejudice under the prejudice component of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.

9. **Effectiveness of Counsel: Appeal and Error.** Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.

10. \_\_\_\_: \_\_\_\_. A general assignment of ineffective assistance that does not specify counsel's deficiency is insufficient to raise the claim on direct appeal.

11. **Effectiveness of Counsel: Witnesses: Appeal and Error.** To effectively raise on direct appeal a claim of ineffective assistance of trial counsel in relation to the failure to call witnesses, appellate counsel must give on direct appeal the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel.

12. \_\_\_\_: \_\_\_\_: \_\_\_\_. Vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim.

13. \_\_\_\_: \_\_\_\_: \_\_\_\_. References to trial counsel's failure to call "character witnesses," "multiple eyewitnesses," and "alibi witnesses" have been deemed insufficiently specific to effectively raise a claim of ineffective assistance of counsel on direct appeal.

14. **Lesser-Included Offenses: Jury Instructions: Evidence.** A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the

defendant of the greater offense and convicting the defendant of the lesser offense.

15. ____: ____: ____. It is not prejudicial error to fail to instruct upon a lesser-included offense when the evidence entirely fails to show an offense of a lesser degree than that charged in the information.

16. **Criminal Attempt: Lesser-Included Offenses.** To be guilty of an attempt, a person must intentionally engage in conduct constituting a substantial step toward the completion of the underlying crime.

17. **Effectiveness of Counsel: Jury Instructions: Appeal and Error.** To effectively raise on direct appeal a claim of ineffective assistance of trial counsel for failing to file and offer other appropriate jury instructions or failing to object to the jury instructions as given, appellate counsel must give on direct appeal the specific subject or description of any jury instruction that forms the basis of a claim of ineffective assistance of trial counsel.

18. **Criminal Law: Directed Verdict.** In a criminal case, the court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged or (2) evidence is so doubtful in character and lacking in probative value that a finding of guilt based on such evidence cannot be sustained.

19. **Criminal Law: Directed Verdict: Appeal and Error.** In an appellate court's consideration of a criminal defendant's motion for a directed verdict, the State is entitled to have all its relevant evidence accepted as true, every controverted fact resolved in its favor, and every beneficial inference reasonably deducible from the evidence.

20. **Directed Verdict.** If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed.

21. **Appeal and Error.** Only the issues that have been specifically assigned and specifically argued on appeal will be considered by an appellate court.

Appeal from the District Court for Scotts Bluff County: Leo P. Dobrovolny, Judge. Affirmed.

Sterling T. Huff, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

Pirtle, Bishop, and Freeman, Judges.

Freeman, Judge.

## INTRODUCTION

Matthew A. Hall appeals from his convictions and sentences following a jury trial in Scotts Bluff County District Court. He claims that his trial counsel was ineffective in various respects. For the reasons set forth below, we affirm.

## BACKGROUND

On December 22, 2023, Hall was originally charged by information with possession of a firearm by a prohibited person, a Class ID felony; possession of a stolen firearm, a Class IIA felony; two counts of possession of a controlled substance (methamphetamine and fentanyl), a Class IV felony; possession of drug paraphernalia, an infraction; and operating a motor vehicle without a license, a Class III misdemeanor. Prior to trial, the State received testing results from the Nebraska State Patrol Crime Laboratory, which led to the filing of an amended information revising the possession of fentanyl charge to possession of LSD, also a Class IV felony.

A jury trial was held on June 3 and 4, 2024. The evidence adduced at trial consisted of testimony from eight witnesses for the State, and Hall testified in his own behalf for the defense. The court received a joint stipulation that stated Hall was previously convicted of a felony and was thus prohibited from possessing a firearm.

The evidence established that on December 7, 2023, Heather Hernandez stole Jakob Callan's pickup truck from his place of employment in Mitchell, Nebraska. Callan discovered the truck was missing around 1:30 p.m. that day and contacted local law enforcement. He reported that his AR-15-style rifle (AR-15 rifle) was stored in the truck at the time of the theft.

Hernandez drove the truck to Hall's residence in Morrill, Nebraska, where both Hall and Danae Carnes were present. Hernandez told them that the truck belonged to an acquaintance and that it was "driving funny." She asked Hall and Carnes to

follow her to Mitchell in a separate vehicle in case the truck broke down. They agreed and followed Hernandez until the truck came to a stop. Hall attempted to help Hernandez restart the truck but was unsuccessful.

Carnes testified that, at that time, Hernandez informed Hall there was a firearm in the truck. In contrast, Hernandez testified that Hall was the first to notice the firearm on the truck's floorboard. Hernandez claimed that she was unaware of the firearm's presence until Hall pointed it out to her.

Hernandez testified that Hall wanted the firearm, so he removed it from the truck and placed it in his own vehicle. Both Hernandez and Carnes described the sequence of events as follows: Hall retrieved a laundry bag from his vehicle, returned to the truck, placed the firearm inside the bag, and brought it back to his vehicle. Hall then drove the group back to his residence.

Carnes testified that once the group arrived at Hall's residence, Hall and Hernandez exited the vehicle together. Carnes testified that Hall was carrying the bag containing the firearm and that he and Hernandez entered his garage for approximately 10 minutes. When they returned, Hall no longer had the firearm. Hernandez agreed that Hall removed the firearm from his vehicle but denied entering the garage with him. Afterward, Hall and Carnes drove Hernandez to Scottsbluff, Nebraska.

Callan's truck was recovered on the side of the road just north of Morrill at approximately 4:30 p.m. Callan's AR-15 rifle was not in the truck. Some nearby residents informed law enforcement that a white sedan had stopped to assist the driver of the truck. Law enforcement suspected that Hall either owned the white sedan or was associated with it.

Law enforcement stationed units along a local highway to watch for the white sedan. Around 8:30 p.m., an officer observed the vehicle and followed it from Mitchell to Morrill while running the license plates and calling for backup. The

vehicle's registered owner had a suspended license, prompting a traffic stop. Hall was identified as the driver, and Carnes as the sole passenger. Hall stated that he did not possess a Nebraska driver's license, which statement the officer later confirmed.

During the traffic stop, a second officer arrived on the scene and spoke with Carnes. The officer asked Carnes about the location of the firearm, which Carnes understood to refer to the AR-15 rifle taken from the truck. Carnes told the officer that she knew where the firearm was and recounted the earlier events of the day. Carnes testified that it was during this conversation that she first learned Hernandez had stolen the truck.

Officers conducted a search of the white sedan and recovered a "pineapple shaped bong," two glass pipes, a baggie containing a blue crystalline substance, a scale, and a "dab pen" (a portable vaporizer designed for consuming cannabis concentrates) that had been converted into a "meth pipe." They arrested Hall and transported him to a detention center. Upon arrival, officers searched Hall and found a folded dollar bill containing a white crystalline substance suspected to be methamphetamine on his person. Investigators sent the baggie recovered from the white sedan and the dollar bill found on Hall's person to the Nebraska State Patrol Crime Laboratory for testing. The laboratory identified the substance in the baggie as LSD and confirmed that the substance on the dollar bill was methamphetamine.

Based on the information obtained during the traffic stop, law enforcement secured a search warrant for Hall's residence. During the execution of the warrant, officers found Callan's AR-15 rifle in Hall's garage. The AR-15 rifle had been placed inside a laundry bag, which was hidden within a detached vehicle seat. The AR-15 rifle was identified by matching its serial numbers to the ones provided by Callan. Law enforcement also seized drug paraphernalia and baggies with residue from the home.

At trial, Hall testified in his own defense. He admitted that, as stated in the joint stipulation, he was a convicted felon. Hall's account was largely consistent with those of Carnes and Hernandez regarding the circumstances leading to the truck's breakdown. Like Carnes, Hall testified that Hernandez never told him the truck was stolen.

Hall confirmed that he first saw the AR-15 rifle when he was assisting Hernandez with the truck. However, Hall denied removing the AR-15 rifle from the truck. Hall testified that he did not know how it ended up in his garage and that Hernandez must have stored it there without his permission. He explained that at the time, his garage was open and unlocked, making it accessible to anyone. Hall testified that when he dropped Hernandez off in Scottsbluff, he believed the AR-15 rifle was still in the truck.

On cross-examination, the State introduced a portion of a videotaped interview law enforcement conducted with Hall following his arrest. In the interview, Hall stated as follows:

> [Hernandez] took [the AR-15 rifle] out of that fucking truck and left it in my garage because she—I knew she was doing something. All right, you're right, I did know about the gun because she asked me if I—if I wanted it. I told her to get that fucking thing as far away from me as she—as she could. . . . When she asked me about it, I told her to get it the fuck out of here. The fact that she put it in my garage really pissed me off. She said she'd come back later.

Hall admitted to making these statements but maintained that he was unaware Hernandez had placed the rifle in his garage until law enforcement informed him during the interview.

After all the evidence was submitted, the court asked both parties if they had any motions to present. Hall's trial counsel replied, "No, your Honor." The court then held a jury instruction conference outside the presence of the jury. Neither party requested any specific instructions, nor did either party object to the court's proposed instructions.

Following the trial, the jury found Hall guilty on all charges. The district court subsequently sentenced Hall to an aggregate sentence of 7 to 7 years' imprisonment and 30 days' imprisonment with credit for time served and ordered him to pay a $100 fine for the drug paraphernalia conviction. Hall appeals and is represented by new counsel on appeal.

## ASSIGNMENTS OF ERROR

Hall assigns, consolidated, reordered, and restated, that his trial counsel was ineffective in (1) some way relating to the joint stipulation; (2) failing to conduct witness examinations of defense witnesses; (3) failing to request a lesser-included instruction for attempted possession of a firearm by a prohibited person; (4) failing to file, request, and offer other appropriate jury instructions and failing to object to the instructions given; (5) failing to motion for a directed verdict and failing to renew the motion at the end of the trial; and (6) failing to make a logical and informative closing argument on the issue of constructive possession.

The State argues that Hall's assigned errors either lack the required specificity as set forth in *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019), or have not been specifically assigned and specifically argued in order to be considered by this court, see *State v. Ramos*, 319 Neb. 511, 23 N.W.3d 640 (2025) (holding that only those issues specifically assigned and specifically argued on appeal will be considered by appellate court). We will address this argument as it relates to each assigned error below.

## STANDARD OF REVIEW

[1,2] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively

determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## ANALYSIS

Hall asserts that his trial counsel was ineffective in multiple respects. Before addressing his specific claims, we begin with a review of the general principles governing ineffective assistance of counsel.

[3-5] When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Vazquez, supra*. To raise an ineffective assistance of counsel claim on direct appeal, the defendant must allege deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id.* When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.*

[6] Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023). The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

[7,8] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Miranda, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice under the prejudice component of *Strickland*, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Miranda, supra*.

*Ineffective Assistance Related
to Joint Stipulation.*

[9,10] Hall first assigns that his trial counsel was ineffective in some way relating to the joint stipulation. We find that this assigned error does not comply with the specificity requirement set forth in *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). The rule announced in *Mrza* states that "assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity." 302 Neb. at 935, 926 N.W.2d at 86. A general assignment of ineffective assistance that does not specify counsel's deficiency is insufficient to raise the claim on direct appeal. *State v. Haas*, 317 Neb. 919, 12 N.W.3d 787 (2024).

In *State v. Archie*, 305 Neb. 835, 943 N.W.2d 252 (2020), the defendant assigned that he received ineffective assistance of counsel in violation of his constitutional rights but did not assign specifically how his counsel was deficient. The defendant contended that the specific instances of deficient performance could be discerned from the argument section of his brief. Citing *State v. Mrza, supra*, the Nebraska Supreme

Court declined to scour the argument section of the defendant's brief for the specific allegations of deficient performance.

Likewise, in *State v. Haas, supra*, the defendant assigned that trial counsel was ineffective for failing to divulge counsel's health condition(s) that impaired counsel's ability to represent the defendant through the trial proceedings. The Supreme Court found that the assigned error lacked the requisite specificity, because the defendant failed to identify how the unspecified health condition made his counsel ineffective.

The same problem exists here. Hall's assignment of error does not identify how his trial counsel was ineffective as it relates to the joint stipulation. Without scouring the brief, we are unable to discern the allegedly deficient performance that made Hall's trial counsel ineffective. Thus, we do not address this assigned error, and it is not preserved for postconviction review.

*Failure to Conduct Witness Examinations.*

Hall alleges that his trial counsel was ineffective for failing to "conduct witnesses examinations [sic] of defense witnesses in a clear and concise manner."

[11-13] The Supreme Court requires a significant degree of specificity in claims concerning witnesses. See *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). To effectively raise on direct appeal a claim of ineffective assistance of trial counsel in relation to the failure to call witnesses, appellate counsel must give on direct appeal the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel. *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024), *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787. Vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim. *Id.* References to trial counsel's failure to call "character witnesses," "multiple eyewitnesses," and "alibi witnesses" have been deemed insufficiently specific to effectively raise a claim

of ineffective assistance of counsel on direct appeal. See *id*. at 678, 11 N.W.3d at 438 (internal quotation marks omitted).

Similarly, Hall's use of the phrase "defense witnesses" is not specific enough to effectively raise an ineffective assistance of counsel claim. In his assignment of error, he does not name or describe the individuals he believes trial counsel should have examined. A district court conducting a postconviction review would be unable to recognize whether the specific witnesses were brought before the appellate court. See *State v. Rupp*, 33 Neb. App. 562, 19 N.W.3d 771 (2025). Moreover, the record shows that Hall was the sole defense witness at trial, rendering the assigned error's reference to multiple defense witnesses inaccurate and misleading. For all these reasons, this claim does not satisfy the specificity requirement, and it is not preserved.

*Failure to Request Lesser-Included
Instruction for Attempted Possession
of Firearm by Prohibited Person.*

Hall assigns that his trial counsel was ineffective in failing to request a lesser-included offense jury instruction for attempted possession of a firearm by a prohibited person. We find that this assigned error satisfies the specificity requirement of *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). We also determine that this assigned error has been specifically assigned and specifically argued. Thus, we review this assigned error in accordance with the applicable jurisprudence.

[14,15] A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021). It is not prejudicial error to fail to instruct upon a lesser-included offense when the evidence

entirely fails to show an offense of a lesser degree than that charged in the information. *State v. McKimmey*, 10 Neb. App. 595, 634 N.W.2d 817 (2001).

[16] The State argues, and we agree, that the evidence in this case did not justify an instruction for attempted possession of a firearm by a prohibited person. To be guilty of an attempt, a person must *intentionally* engage in conduct constituting a substantial step toward the completion of the underlying crime. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017). At trial, Hall testified that he did not ever possess the AR-15 rifle and that he did not know it was stored in his garage until after he was arrested. Thus, the evidence did not support a rational basis for submitting an instruction for attempted possession of a firearm, and trial counsel was not ineffective in failing to offer one. We reject this assignment of error.

*Failure to File, Request, and Offer Other*
*Appropriate Jury Instructions and Failure*
*to Object to Instructions Given.*

[17] Hall next assigns that his trial counsel was ineffective because counsel failed to file, request, and offer other "appropriate jury instructions." Hall also contends that trial counsel was ineffective in failing to object "to the jury instructions as given." These assignments of error do not allege which specific jury instructions his trial counsel should have offered or which specific instructions counsel should have objected to during trial. These broadly worded assignments serve as mere placeholders that prevent the district court on postconviction review from determining what specific issues were preserved. See, generally, *State v. Rupp*, 33 Neb. App. 562, 19 N.W.3d 771 (2025). To effectively raise on direct appeal a claim of ineffective assistance of trial counsel for failing to file and offer other "appropriate jury instructions" or failing to object "to the jury instructions as given," appellate counsel must give on direct appeal the specific subject or description of any jury instruction

that forms the basis of a claim of ineffective assistance of trial counsel. As stated above, this court shall not scour Hall's brief to rectify his lack of specificity. Thus, we do not address these claims, and they are not preserved.

We acknowledge that in *State v. Gonzalez*, 32 Neb. App. 763, 5 N.W.3d 221 (2024), this court reviewed assignments of error with similar language. However, *Gonzalez* is distinguishable in that the ineffective assistance of counsel claims regarding jury instructions were intertwined and coupled with a separately alleged error that the district court had failed to properly instruct the jury. Here, we are not presented with a comparable assignment.

*Failure to Motion for Directed Verdict and*
*Failure to Renew Motion at End of Trial.*

Hall contends that his trial counsel was ineffective in failing to motion for a directed verdict and failing to renew that motion at the end of the trial. We question whether Hall has specifically assigned and specifically argued this error. However, assuming without deciding that this assignment of error has been sufficiently presented to us on appeal, we determine that Hall cannot establish prejudice on this claim.

[18-20] In a criminal case, the court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged or (2) evidence is so doubtful in character and lacking in probative value that a finding of guilt based on such evidence cannot be sustained. *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017). In our consideration of a criminal defendant's motion for a directed verdict, the State is entitled to have all its relevant evidence accepted as true, every controverted fact resolved in its favor, and every beneficial inference reasonably deducible from the evidence. *Id.* If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed. *Id.*

Hall alleges that if his trial counsel had motioned for a directed verdict regarding the charges of possession of methamphetamine and LSD and of operating a motor vehicle without a license, the district court would have sustained that motion. We disagree. Sufficient evidence was introduced to support the jury's finding of guilt on all three counts. As to possession of methamphetamine and LSD, the Nebraska State Patrol Crime Laboratory testing results revealed that the dollar bill found on Hall's person was coated in methamphetamine and that the baggie recovered from Hall's vehicle contained LSD. As for the operating a motor vehicle without a license conviction, testimony revealed that during the traffic stop, Hall told the law enforcement officer that he did not have a Nebraska driver's license. The law enforcement officer confirmed this information shortly thereafter. Thus, the district court would not have granted a motion for directed verdict on these counts, and Hall's trial counsel could not be ineffective in failing to make such a motion. Stated differently, Hall cannot demonstrate a reasonable probability that but for his counsel's allegedly deficient performance, the result of the proceeding would have been different. We reject this assignment of error.

*Failure to Make Logical and Informative Closing
Argument on Issue of Constructive Possession.*

[21] Hall's final assignment of error alleges that his trial counsel was ineffective in failing to make a logical and informative closing argument on the issue of constructive possession. While this assignment satisfies the specificity requirement announced in *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019), Hall fails to specifically argue this point in his appellate brief. Only the issues that have been specifically assigned and specifically argued on appeal will be considered by an appellate court. *State v. Ramos*, 319 Neb. 511, 23 N.W.3d 640 (2025). Therefore, we do not consider this assigned error, and it is not preserved.

## CONCLUSION

Hall's ineffective assistance of trial counsel claims fail or are not sufficiently raised on appeal. We affirm Hall's convictions and sentences.

Affirmed.